[No. A053106. First Dist., Div. Two. Mar. 13, 1992.]

In re BERNARDINO S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BERNARDINO S., Defendant and Appellant.

COUNSEL

Eric Liberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and David Lew, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BENSON, J.**—Appellant Bernardino S. was charged in a petition under Welfare and Institutions Code section 602 with performing a lewd and lascivious act upon a child under the age of 14. Appellant admitted the allegations and was adjudged a ward of the court. The court ordered him, among other things, to register as a sex offender under Penal Code section 290. He contends that section 290 was inapplicable to him by its terms, that the court lacked the power to require him to register, and that even if the

court had some discretion in that regard its discretion was abused here. We agree with the first and second contentions and strike the registration requirement on that basis, without reaching the third contention.

## BACKGROUND

The petition charged appellant with conduct proscribed by Penal Code section 288, subdivision (b), i.e., a lewd and lascivious act, by means of force or fear, upon a child under the age of 14. The petition alleged that the conduct took place in 1985, when appellant would have been 17 or 18 years old. According to reports by the probation officer, the victim stated that in 1985, appellant locked her in a bedroom, undressed her, and attempted to penetrate her. He told her he would slap her face if she screamed, and would hurt her real bad if she told her mother. He was unable to penetrate her. The probation officer wrote that appellant was only 15 or 16 when the offense occurred.[1] Appellant had engaged in no other delinquent behavior before or since. The officer found him a "very immature and naive youth," who displayed "the direct opposite of the definition of criminal sophistication." A court-appointed psychiatrist opined that appellant was "not a true pedophile." Rather, "this present episode can best be understood as an impulsive piece of behavior[,] without judgement, coming from an immature[,] generally rigidly controlled young man . . . . I feel that from what I know[] he is not in any way a danger to the public or to children." A clinical psychologist also reported that he "could find no indication of pedophilic interests, nor of personality disorder of the type which would lead to such a behavior." The probation officer recommended that appellant be adjudged a ward of the court and placed in his parents' home under the supervision of the probation officer.

At a hearing in February 1991 appellant admitted the allegations of the petition. The court issued a dispositional order largely adopting the recommendations of the probation officer, but including the following provision: "Subject shall register as a sex offender pursuant to 290 PC." During the hearing the court expressed the view that it was "required" to impose such a requirement. Appellant's attorney contended otherwise and filed a motion to delete the registration requirement. The court denied the motion. This timely appeal followed.

---

[1]Although the victim reported that the misconduct occurred in 1985, there is some indication that she believed appellant was 15 at the time, which would have placed the offense in 1982 or 1983. Appellant stated that the incident occurred right after his graduation from the eighth grade, i.e., 1983. The probation officer apparently accepted appellant's recollection as accurate.

ANALYSIS

A. *Penal Code Section 290 and Juvenile Court Law*

Prior to 1986, Penal Code section 290 required registration only by persons who had been "convicted" of specified sex offenses.[2] (1) Under the juvenile court law, a person adjudged a ward of the court has not been "convicted" of anything. Welfare and Institutions Code section 203 provides that a wardship adjudication "shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."

It is conceivable that subdivision (b) of Penal Code section 290, as then in effect, might have been construed to require registration by a juvenile offender who had been "confined" in an "institution" as a result of having committed one of the enumerated offenses. It is more likely, however, that subdivision (b) was intended not to expand the class of persons subject to the registration requirement, but merely to prescribe a procedure for giving notice of that requirement to persons described in subdivision (a). It might also be supposed that applicability to juvenile wards is suggested by the reference to the Youth Authority in subdivision (g). That reference, however, is best explained as anticipating situations where a juvenile might be committed to the Youth Authority after trial and conviction in a criminal court. (See Welf. & Inst. Code, §§ 707.2, 1731.5, subds. (a)(1), (c).)

The Legislature's own interpretation of the statute as applied to juvenile wards became apparent when, in 1985, it amended Penal Code section 290

---

[2]"(a)  Any person who . . . has been or is hereafter convicted in this state of . . . any offense defined in Section . . . 288 . . . , shall . . . register with the chief of police of the city in which he or she is domiciled or the sheriff of the county if he or she is domiciled in an unincorporated area.

"(b)  Any person who . . . is discharged or paroled from a jail, prison, school, road camp, or other institution where he or she was confined because of the commission or attempt to commit one of the above-mentioned offenses . . . shall, prior to discharge, parole, or release, be informed of his duty to register under this section . . . .

"(c)  Any person who . . . is convicted in this state of the commission or attempt to commit any of the above-mentioned offenses and who is released on probation or discharged upon payment of a fine shall, prior to release or discharge, be informed of the duty to register under this section . . . .

" . . . . . . . . . . . . . . . . . . . . .

"(g)  Whenever any person is released on parole or probation and is required to register under this section but fails to do so within the time prescribed, the Board of Prison Terms, the Youth Authority, or the court, as the case may be, shall order the parole or probation of the person revoked." (Former Pen. Code, § 290; see Stats. 1984, ch. 1419, § 1, pp. 4988-4990.)

by adopting a new subdivision (d) expressly dealing with wards of the juvenile court.[3] Extrinsic legislative materials strongly indicate that the preamendment statute had no application whatever to juvenile wards: "Although persons, including remanded minors, committed to Youth Authority from *criminal* court for specified sex offenses must register under current law, juvenile court commitments do not currently have to register no matter how violent their offense." (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 888 (1985-1986 Reg. Sess.) as amended Sept. 12, 1985, p. 2 [3d reading analysis].) The Legislature viewed the amendment as an expansion of the statute's sweep to persons previously excluded. (Legis. Counsel's Dig., Sen. Bill No. 888, 4 Stats. 1985 (Reg. Sess.), Summary Digest, p. 553 ["expanding the category of persons to which a criminal penalty is applicable"]; 3d reading analysis, *supra*, p. 1 ["expands application of the registration requirements"].)

Given this legislative interpretation of the pre-1986 statute and the complete absence of contrary authority, it seems clear that the sole statutory basis for requiring juvenile wards to register as sex offenders is the 1985 amendments themselves.[4] We turn now to the question whether those amendments can be properly understood as bringing appellant within the statute.

## B. *Scope of Statutory Requirement*

Appellant contends that under Penal Code section 290, a juvenile ward must register as a sex offender only if he or she has been committed to the Youth Authority. Since he was never so committed, he asserts, it was error to require him to register. This contention has merit.

By its plain words, Penal Code section 290 requires registration of juvenile wards only when they are discharged or paroled from the Youth

---

[3] "(d)(1)   Any person who, on or after January 1, 1986, is discharged or paroled from the Youth Authority to the custody of which he or she was committed after having been adjudicated a ward of the court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of the following offenses shall be subject to registration under the procedures of this section: . . . any offense defined in Section 288 . . . .

"(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3)   The duty to register under this section for offenses adjudicated by a juvenile court shall terminate when a person reaches the age of 25.

"(4)   All records specifically relating to the registration in the custody of the Department of Justice, law enforcement agencies, and other agencies or public officials shall be destroyed when the person required to register attains the age of 25 or has his or her records sealed . . . ." (Former Pen. Code, § 290, subd. (d); Stats. 1985, ch. 1474, § 1, pp. 5404-5405.)

[4] Appellant does not raise, and we do not address, the question whether application of the registration requirement to conduct not covered at the time of its occurrence would run afoul of the constitutional prohibition on *ex post facto* laws. (See 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, § 419, p. 601; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 16, p. 19; U. S. Const., art. I, § 9; Cal. Const., art. I, § 9.)

Authority after having been committed for one of the enumerated offenses. When the language of a statute is clear there is no occasion for construction and courts should not indulge in it. (*In re Keith T.* (1984) 156 Cal.App.3d 983, 986 [203 Cal.Rptr. 112].) The plain language of section 290 says that it applies to a class of juveniles which does not include appellant. From this it follows that the statute does not require appellant's registration as a sex offender.

Respondent, however, cites the rule that a statute will not be applied literally where to do so would lead to absurdity or a result contrary to legislative intent. (See *People* v. *Davis* (1981) 29 Cal.3d 814, 828-829 [176 Cal.Rptr. 521, 633 P.2d 186]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 334 [105 Cal.Rptr. 1, 503 P.2d 257]; *People* v. *Hannon* (1971) 5 Cal.3d 330, 335 [96 Cal.Rptr. 35, 486 P.2d 1235].) Respondent attempts to bring section 290, as applied to juveniles, within this rule by suggesting that there is no rational basis for distinguishing between wards committed to the Youth Authority and other juvenile sex offenders, or between wards not sentenced to the Youth Authority and adults placed on probation.

This argument rests on nothing more than respondent's ipse dixit assertions, and for that reason alone is entirely inadequate to support a departure from the statute's plain meaning. ■ A legislative enactment is presumptively valid and a legislative classification is presumptively intentional and deliberate. On the face of it the classification here has a rational function. The Legislature recognized the "stigma" associated with sex offender registration, and acknowledged some tension between registration and the rehabilitative goals of the juvenile court law. For this reason the 1985 amendments provided that the requirement would be lifted, and the records of registration expunged, when the affected juvenile reached age 25. (Pen. Code, § 290, subds. (d)(3), (4).) This provision was explained by the sponsor as follows: "[T]he premise for maintenance of a separate judicial system for juvenile offenders is that the prospects for rehabilitation are greater. A registration system under which the duty of juveniles to register ends at age 25 will serve the goal of public protection while allowing rehabilitated minors to be free from the stigma of registration." (3d reading analysis, *supra*, p. 2.) This same goal—balancing public protection against juvenile rehabilitation—is served by the restriction of the registration requirement to Youth Authority committees: "The bill's sponsor, Department of the Youth Authority, contends that registration enables law enforcement to keep track of *potentially dangerous* sex offenders residing in their jurisdiction. [¶] . . . . Although *violent or repeat offenders* over age 16 are often remanded to adult court, juvenile sex offenders under age 16 remain under the jurisdiction of the juvenile court." (3d reading analysis, *supra*, p. 2, italics added.)

In other words, the Legislature consciously sought to require registration only of those "violent or repeat offenders" whose dangerousness warranted the imposition of a penal measure otherwise reserved for convicted criminals. It chose to do so by predicating registration on the juvenile's having been subjected to the most restrictive of all juvenile court dispositions, Youth Authority commitment. Juveniles subjected to that disposition were more likely to be "violent or repeat" offenders than those receiving a less restrictive disposition. (See Welf. & Inst. Code, § 725.5 [factors court must consider in determining proper disposition are age, "circumstances and gravity of the offense," and "previous delinquent history"].) The line drawn by the Legislature may not include all juvenile wards as to whom the degree of dangerousness is unacceptably high, and it may not exclude all those as to whom the risk is low. However, the Legislature is not required to formulate a perfect classification or a perfect test. If it were, few statutory distinctions could survive.

Nor is there anything absurd or irrational in the distinction between convicted adult sex offenders placed on probation, who must register, and juvenile sex offenders exempted from registration because they are not committed to the Youth Authority. Apparently respondent would have us hold that the Youth Authority is equivalent to state prison, that any lesser juvenile disposition is equivalent to probation, and that a juvenile "probationer" stands in the same position as an adult probationer. The comparison is so thoroughly mistaken that we are frankly surprised at respondent for offering it. Although criminal law terminology (such as the term "probation") is sometimes confusingly employed in juvenile court, the fact remains that the two systems are as separate and distinct as apples and oranges. The differences in policy, substantive principle, and procedure are myriad. Most pertinent here is the fact that up to 1985, wards of the juvenile court were *entirely exempt* from Penal Code section 290. The 1985 amendments did not create a new distinction between juvenile and criminal offenders, as respondent would have us believe, but *partially rescinded* an *existing* distinction. The fact that the Legislature specifically addressed the distinction without abolishing it precludes our holding that the distinction is irrational, inadvertent, or absurd. We detect no principled basis whatsoever for a judicial refusal to enforce the statute as drawn.

## C. *Dispositional Discretion*

Appellant never incurred a *statutory* obligation to register. However, respondent appears to suggest that perhaps the juvenile court possessed the power to require registration, in an exercise of its dispositional discretion, even if appellant did not come within the terms of Penal Code section 290.

One answer to this suggestion is that the trial court apparently believed it was *required* to order registration. This, at least, is the gist of the court's remarks in the original dispositional hearing. The matter is somewhat clouded, however, because appellant seasonably moved to vacate that order, pointing out the explicit limitation in subdivision (d) of Penal Code section 290 to juveniles committed to the Youth Authority. In denying that motion it is unclear whether the trial court continued to believe appellant came within the statute—a belief for which there is no apparent basis on this record—or whether at that point it elected to impose the registration requirement as an exercise of discretion. Ultimately it does not matter because, as we shall conclude, the trial court lacked the power to require registration.

■ We begin by acknowledging the juvenile court's broad discretion in fashioning dispositional orders in wardship cases. Under Welfare and Institutions Code section 730, the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." ■ ■ ■ ■ This language resembles that governing adult probation conditions (see Pen. Code, § 1203.1), and cases applying the latter are illustrative of the scope of the juvenile court's dispositional discretion. (*In re Christopher W.* (1973) 29 Cal.App.3d 777, 783 [105 Cal.Rptr. 775]; 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 9.56, p. 257.)[5]

■ The power to impose conditions of probation, while broad, is not boundless. (*People* v. *Bauer* (1989) 211 Cal.App.3d 937, 940 [260 Cal.Rptr. 62].) A valid condition must either bear a relationship to the crime of which the offender was convicted, or be reasonably related to the avoidance of future criminality. (*Id.* at p. 942; *People* v. *Lent* (1975) 15 Cal.3d 481, 486

---

[5]Indeed, dipositional orders other than the basic adjudication of wardship and determination of appropriate placement are referred to in the juvenile court law itself as "conditions of probation." (E.g., Welf. & Inst. Code, §§ 725, 728, 729, 729.6, 729.7, 729.8; 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1991 Supp.) § 9.56, pp. 144-145.) This usage is somewhat misleading because a dispositional order differs fundamentally from a grant of probation. " 'Probation' " in criminal law denotes " 'an act of grace and clemency, which may be granted by the court to a seemingly deserving defendant, whereby he may escape the extreme rigors of the penalty imposed by law.' " (*Lee* v. *Superior Court* (1949) 89 Cal.App.2d 716, 717 [201 P.2d 882].) A criminal defendant generally has the right to refuse probation if the accompanying conditions are considered more onerous than the penalty imposed by law. (*In re Osslo* (1958) 51 Cal.2d 371, 377 [334 P.2d 1].) In contrast, juvenile probation is not an act of leniency or an alternative to a more rigorous prescribed penalty, but "a final order made in the minor's best interest." (1 Cal. Juvenile Court Practice, *supra*, § 9.52, p. 256.) The order is unconditional and the juvenile has no right to "refuse" it. Insofar as the court might have imposed a more restrictive order, the juvenile is theoretically *entitled* to the order he actually receives because it presumably serves his "best interests" better than a more onerous disposition would. The order can be modified to impose a more restrictive disposition, but this requires separate supplemental proceedings. (See Welf. & Inst. Code, § 777.)

[124 Cal.Rptr. 905, 541 P.2d 545]; *In re Christopher W., supra*, 29 Cal.App.3d at p. 783.) A condition of probation may also be stricken on appeal if it operates to circumvent a prescribed statutory procedure and thereby nullify a manifest legislative policy. (E.g., *In re Gerald B.* (1980) 105 Cal.App.3d 119, 126-127 [164 Cal.Rptr. 193] [provision for summary confinement in juvenile hall upon unexcused absence from school].)

■ A criminal defendant convicted of an offense not included in Penal Code section 290 may not be compelled to register as a condition of probation. In *People* v. *Brun* (1989) 212 Cal.App.3d 951 [260 Cal.Rptr. 850], the defendant pleaded no contest to possessing methamphetamine for sale. As a condition of probation, the trial court ordered him to register under Health and Safety Code section 11590, even though the statute did not extend to his offense. The reviewing court struck down the condition. "The Legislature specifically enumerated within section 11590 those particular offenses for which it deemed registration appropriate; violation of section 11378 is not enumerated. It is a long-standing rule of statutory construction that the expression of certain things in a statute necessarily involves exclusion of other things not expressed. [Citation and fn. omitted.] . . . [¶] A similar principle has been applied in the context of interpreting the sex offender registration statute . . . ." (*Id.* at p. 954.) "The trial court could not subject defendant to the specific statutory obligations and disabilities where the Legislature, by its omission of defendant's crime from section 11590, has manifested an intent that registration is not required." (*Id.* at p. 955; see *People* v. *Saunders* (1991) 232 Cal.App.3d 1592, 1598 [284 Cal.Rptr. 212] [registration ordered in conjunction with prison sentence; order stricken even though exclusion of offense from section 290 was "incongruous" in several resects].)

In *People* v. *Tye* (1984) 160 Cal.App.3d 796, 803 [206 Cal.Rptr. 813], the defendant was charged with a registerable offense but convicted of a lesser, nonregisterable offense. The reviewing court struck down a condition of probation requiring the defendant to register. The opinion may be read as resting on the narrow ground that there was no unequivocal finding of registerable conduct and no indication of a propensity to commit such crimes. (See *id.* at pp. 802-803.) ■■■■ However, the case is cited in *People* v. *Brun, supra*, 212 Cal.App.3d at page 954, for the proposition that "Because registration is a highly onerous requirement, persons convicted of sex offenses not listed in [Penal Code] section 290 may not be required to register under that statute as a condition of probation."[6]

■ These cases support the proposition that the legislative determination of who should register and who should not is exclusive, and that the trial

---

[6]A contrary result was reached, but without acknowledging the possibility of statutory preclusion, in *People* v. *Troyn* (1964) 229 Cal.App.2d 181 [39 Cal.Rptr. 924]. The court there rejected the defendant's contention that the trial court "abused its discretion in not granting

court cannot expand the legislative classification through its power to impose conditions of probation. Here the Legislature adopted a classification which exempted applicant from the registration requirement. We conclude that the trial court lacked the power to impose such a requirement.

The registration requirement is stricken from the dispositional order. As so modified, the order appealed from is affirmed.

Smith, Acting P. J., and Peterson, J., concurred.

---

him straight probation." (*Id.* at pp. 182, 184.) Of course, a case is not authority for a proposition not considered or passed upon. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 754.)